UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VICKIE NAGEL,

                Plaintiff,

v.                                                                         Case No. 22-cv-0914-bhl

KILOLO KIJAKAZI, Acting Commissioner
for Social Security Administration,

                Defendant.

# DECISION AND ORDER

Plaintiff Vickie Nagel seeks the reversal and remand of the Acting Commissioner of Social Security's decision denying her application for disability benefits under the Social Security Act. For the reasons set forth below, the Court will grant her request, reverse the Acting Commissioner's decision, and remand the case for further proceedings.

## PROCEDURAL BACKGROUND

Vickie Nagel applied for Social Security disability benefits on July 2, 2020, alleging an onset date of February 6, 2020, later amended to November 14, 2019. (ECF No. 9 at 1.) Her claim was denied initially and on reconsideration, so she sought a hearing before an administrative law judge (ALJ). (*Id.*) That hearing occurred on February 15, 2022. (*Id.*) One month later, in a decision dated March 15, 2022, the ALJ denied Nagel's claim. (*Id.*) The Appeals Council denied her request for review, and this action followed. (*Id.*)

## FACTUAL BACKGROUND

Nagel sustained a serious lumbar injury in a car accident that occurred sometime in April of 2018. (ECF No. 8-1 at 34-35.) Despite a variety of treatments, including an epidural steroid injection, she has experienced progressively worsening pain ever since. (*Id.* at 37-38.) She relies on a cane anytime she leaves the house. (*Id.* at 38.) And while she helps with some household chores, her "son has taken over quite a bit" of her tasks. (*Id.* at 43.) In his decision, the ALJ concluded that Nagel had the following severe impairments: "degenerative disc disease of the lumbar spine and asthma." (*Id.* at 19.) But he determined that the evidence did not support the

severity of her alleged symptoms and therefore found her capable of performing work in the national economy. (*Id.* at 23-24.)

## LEGAL STANDARD

The Acting Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accepts as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.* Thus, in rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted).

In reviewing the entire record, this Court "does not substitute its judgment for that of the [Acting] Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Nagel argues that the ALJ mischaracterized and tailored the record to conform to his preconceived conclusions. The Acting Commissioner responds that an ALJ need not address every scintilla of evidence in the often 1,000-page-long record before him. This response is true, but the law requires that he at least confront the evidence that is contrary to his conclusions. Because the ALJ in this case did not do so, the Court will reverse and remand for further proceedings.

**I.    In Making His Credibility Determination, the ALJ Did Not Confront Contrary Evidence.**

An ALJ must evaluate a claimant's credibility. Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, *3-5 (Oct. 25, 2017); see *Apke v. Saul*, 817 F. App'x 252, 257 (7th Cir. 2020). This is a two-step process. First the ALJ asks "whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. "Second, the ALJ considers whether the record supports the severity of the symptoms the [individual] alleges." *Apke*, 817 F. App'x at 257. In making this second

determination, the ALJ must examine the objective medical evidence as well as other evidence, including daily activities, aggravating factors, and treatment. 20 C.F.R. §404.1529(c)(1)-(3). And he must at least acknowledge evidence that runs counter to his conclusions. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Once the credibility determination is made, courts afford it "'special deference' and will overturn it only if it is 'patently wrong.'" *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)).

In Nagel's case, the ALJ found that her lumbar impairment could reasonably be expected to produce her alleged symptoms but concluded the record did not support the purported severity of those symptoms. (ECF No. 8-1 at 21.) This determination, however, eschewed favorable evidence, producing a slanted summary of Nagel's medical history. In her "Function Report," Nagel described severe symptoms, including an inability to sit or stand for long periods, the need to take regular breaks while cooking, and the ability to perform cleaning and do laundry only with help and only for 3-4 hours every 3-4 days. (*Id.* at 190-92.) The ALJ refused to credit this subjective account, in large part, because it conflicted with medical evidence of record. More specifically, the ALJ noted that after receiving (ineffective) epidural steroid injections, Nagel returned to her primary care provider, Dr. Daniel Nordin, who "consistently noted a normal gait." (*Id.* at 21-22.) But the ALJ failed to discuss that Dr. Nordin then issued Nagel two temporary parking permits—on January 25, 2021 and July 27, 2021—because she struggled to walk long distances and relied on a cane whenever she left the house. (*Id.* at 357, 393.) Dr. Nordin also advised Nagel that she might consider a permanent parking permit since her symptoms appeared unabating. (*Id.* at 393.) This is precisely the kind of evidence that the Seventh Circuit has warned ALJs not to ignore. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (remanding because the ALJ failed to consider all relevant evidence); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("ALJ may not ignore an entire line of evidence that is contrary to the ruling."); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (An ALJ "must confront the evidence that does not support his conclusion and explain why it was rejected.").

In response, the Acting Commissioner cites *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) for the proposition that a disability parking placard proves nothing. In *Halsell*, the Seventh Circuit rejected a claimant's argument that an ALJ "should have given weight to her successful application for a disability parking placard" because "the placard proves nothing unless the disability standard is the same." *Id.* This logic does not apply here for two reasons. First, the

ALJ in *Halsell* acknowledged the parking permit's existence and thus satisfied his obligation to at least address it as potentially contrary evidence. *Id.* at 721 ("[T]he ALJ commented that . . . the parking-placard application was irrelevant."). Second, and more importantly, the claimant in *Halsell* was attempting to use her successful permit application to bootstrap a finding of *disability*. *Id.* at 722. The Seventh Circuit highlighted that many people who receive disability parking permits are not "disabled" under the Social Security Administration's definition. A parking permit is not, therefore, *prima facie* evidence of disability. Nagel's argument is not so wooden. Instead, she asserts that her primary care provider's decision to approve two temporary parking permits (and suggest a permanent one) is evidence that tends to support her subjective allegations. This is a legitimate point. If the ALJ wanted to rely on Dr. Nordin's assessment of Nagel's gait, he needed to also address that same doctor's willingness to issue disability parking permits on ambulatory grounds. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (An ALJ "cannot simply cherry-pick facts that support a finding of non-disability."). Had he done so, the ALJ may have reached a different conclusion on credibility and ultimately approved Nagel's claim. This requires a remand.

Because the case will be remanded anyway, the ALJ should also consider whether Nagel's treatment really qualifies as "limited" such that it undermines her subjective symptom allegations. The record shows that Nagel underwent "extensive [physical therapy]" in 2018, attempted chiropractic treatment, regularly performed a home exercise program, took gabapentin and naproxen for pain, trialed meloxicam and baclofen, received an epidural steroid injection, tried yoga, and shortly before her hearing, gave chiropractic therapy a second go. (ECF No. 8-1 at 267-68, 280, 422.) According to SSR 16-3p, "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." 2017 WL 5180304, at *9. Under this standard, Nagel's throw-everything-at-the-wall approach to treatment may increase her credibility. Yet the ALJ held, for example, that Nagel's disjointed medical history actually subverted her subjective allegations. (ECF No. 8-1 at 21-22 (dismissively noting that Nagel did not seek further treatment from Dr. Gikas after the epidural steroids he injected failed to provide relief)). This seems a likely misapplication of SSR 16-3p and warrants at least a more fulsome discussion on remand.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Acting Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceeding consistent with this decision pursuant to 42 U.S.C. §405(g), sentence four.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on April 11, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
